## COUNCIL OF OAK HARBOR, Election of, In re.

Common Pleas Court, Ottawa County.

No. 13499. Decided December 30, 1953.

## OPINION

By McCRYSTAL, J.

This case was submitted on an agreed statement of facts, which reads as follows:—

It is stipulated and agreed by and between the parties hereto:

1. That said Board of Elections originally furnished 200 ballots to each precinct and thereafter, on November 3, 1953, anticipating a possible shortage, ordered further ballots and at about 6:10 P. M. furnished an additional 100 ballots to each precinct and no more.

2. That all polling places of said village are in the village hall which is located in Precinct No. 3; that no polling places were provided in precincts numbered 1 and 2 for said election and said Board of Elections took no action in regard thereto; and that Precinct No. 2 is adjacent to Precinct No. 3, but Precinct No. 1 is not adjacent to Precinct No. 3.

3. That the vote cast for Governor at the November 4, 1952 election was as alleged in the petition.

4. That said polls closed promptly at 6:30 P. M. on November 3, 1953, but that all persons then in line and waiting to vote, were permitted to vote.

5. That contestor Louis Brindley received 330 votes and the next higher candidate for council. Lewis Wistinghausen, received 374 votes.

6. That testimony of qualified electors of said village would show that not less than 46 electors of said village came to said polling places when no ballots were available and upon being advised that no ballots were then available left said polling places and did not return, and

7. That no active fraud, done or permitted by any person or board, is alleged or claimed.

It is further stipulated and agreed that the foregoing stipu-

lation shall be all of the evidence before said court, for decision in this Case No. 13,499, and no other evidence shall be introduced.

Dated December 9, 1953.

---

The contestors pray the court to declare the election held on November 3, 1953, in the Village of Oak Harbor for the office of council void.

The basis for their claims are two admitted and undisputed violations of the election code of Ohio, viz, §3505.11 **R. C.** (§4785-111 **GC**); and §3501.19 and §3501.21 **R. C.** (§4785-22 and §4785-24 **GC**).

**Sec. 3505.11 R. C.** reads in part as follows:

"The ballots X X X shall be bound into tablets for each precinct which tablets **shall** contain **at least** ten per cent more ballots than there were votes cast for the office of Governor in such precinct at the last preceding general election. (Emphasis added.)

No statute could be written in a more clear and concise manner. The use of the words **"shall"** and **"at least"** remove all doubt as to the intent of the Legislature. This section sets up a mandatory minimum requirement. In the instant case there was not even substantial compliance. Whereas. at least 1512 ballots should have been in the precincts when the polls opened, only 600 were issued and later after the damage had been done only 300 more were provided. Why the provisions of this section were not complied with will not help us here, but some fundamental observations may help prevent a similar occurrence in the future.

In oral argument, counsel for the contestees stated that the Board of Elections was somewhat misled by a pamphlet or instruction book which attempts to guide and advise election officials. Whether or not such booklet would mislead election officials, it should be pointed out that §309.09 **R. C.** (§2917 **GC**) makes the prosecuting attorney the legal advisor of the Board of Elections and nothing in §3501.05 **R. C.** (§4785-7 **GC**) derogates from this power and duty of the prosecuting attorney. All questions as to the interpretation or construction of election laws should be presented to the prosecuting attorney. and it is **his duty** to give an opinion to the Board of Elections, or to secure an opinion from the attorney general.

It is all too common practice for public officials to ignore this mandatory function of the prosecuting attorney and attorney general, and to rely on unofficial pronouncement of administrative officers, having no duty or legal right to render legal opinions to public agencies. It is inconceivable that any prosecuting attorney or attorney general would have advised

so flagrant a violation of the law as occurred in this case. No pamphlet, newspaper article or other publication of an administrative official is a substitute for a legal opinion of the attorney charged with the duty of giving legal advise to the Board of Elections.

Since this statute creates a mandatory minimum requirement, what is the effect of a violation of its terms? It is the opinion of this court that said violation voids the election for the office of council. Much stress has been placed on the fact that a trend was established in the election at 5.00 P M. and that to set aside the election, the court must indulge the presumption that those voters refused a ballot, would have voted in such a way as to have changed the outcome. This court is of the opinion that in cases of this nature, courts should indulge in no presumption. The fact that one person was refused a ballot under the circumstances existing here, would be enough to put the election in doubt and to void that election. The knowledge that the ballots were exhausted, might keep many from even approaching the polls, and this court might with the same degree of relevancy indulge the further presumption that those who approached the polls during the period would be merely those who "didn't get the word." If courts decide contested election cases on such doubtful presumptions, it will have the effect of rendering our election laws directory only, and result in the eventual abolition of the traditional safe guards of voting. For a Board of Elections to fail to furnish the minimum ballots required by law, and subsequently have the ballots exhausted before closing time, would render the total vote in these precincts void irrespective of the number of people refused the right to vote. The election laws that pertain to the fundamental operation of voting, such as ballots and the make-up, should be rigidly enforced. Any relaxation of such enforcement will only invite fraud and corruption.

Contestors raise a second ground for voiding the election, viz, a violation of §3501.19 and §3501.21 **R. C.** (§4785-22 and §4785-24 **GC).**

**Sec. 3501.19 R. C.** provides in part as follows:—

"In order to provide for the convenience of the voters the Board of Elections may locate polling places for voting or registration outside the boundaries of precincts, providing that no polling place shall be located beyond the boundary of any of the next adjoining precincts."

**Sec. 3501.21 R. C.** provides for the steps that must be taken in the event the Board of Elections decides to change or locate the polling place outside the boundaries of a precinct.

In this case it is admitted that neither section was complied with. Again these statutes are clear and unequivocal. Their meanings are obvious and their requirements are mandatory. These sections are of such a nature and pertain to such a vital and fundamental part of an election that the effect of a violation cannot with reasonable certainty be measured by any court. The outcome of an election should not depend on the decision of any court as to whether there was a substantial compliance, or whether sufficient voters absented themselves so as to raise a doubt as to the outcome. These sections are mandatory; the subject matter essential and fundamental and it is the duty of the Board of Election to comply therewith.

To validate an election held in violation of the fundamental statutes governing (1) the providing of the ballot itself and (2) the place where the ballots shall be cast, because it appeared that the result would have been the same even in a strictly legal election, is to open the door to election officials to hold illegal elections and to gamble on the results thereof. If the result is favorable to the candidate or issue such officials desire to prevail, the election may be validated, but if the result is unfavorable to such candidate or issue, the result may easily be set aside by revealing the illegal procedures indulged in. No deviation from laws governing such fundamental prerequisites to a valid election can be permitted

While either of the grounds set forth in the contestors' petition and amended petition would be sufficient to void this election, the presence of both grounds in the same election makes it clear that it is the duty of the Court to find as it now declares that the election held on November 3, 1953, in the Village of Oak Harbor, for the office of council is void.